[Cite as *State v. McLaughlin*, 2026-Ohio-517.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | C.A. No. 25AP0026 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MARK ANTHONY MCLAUGHLIN | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. 2025 CRC-I 000002 |

DECISION AND JOURNAL ENTRY

Dated: February 17, 2026

STEVENSON, Judge.

{¶1} Defendant-Appellant Mark Anthony McLaughlin appeals the judgment of the Wayne County Court of Common Pleas sentencing him to a lifetime suspension of his operator's license. For the following reasons, this Court affirms.

I.

{¶2} The Wayne County Grand Jury indicted Mr. McLaughlin on one count of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B), a felony of the third degree (count one), and three minor misdemeanor traffic offenses.

{¶3} The charges arose from a police pursuit of a vehicle driven by Mr. McLaughlin. Mr. McLaughlin confirmed his vehicle reached speeds over one hundred miles in the pursuit, which lasted almost 40 minutes and involved multiple jurisdictions. The pursuit ended when Mr. McLaughlin crashed after driving in a residential yard to avoid spike strips. Mr. McLaughlin entered a plea of not guilty to the charges at his arraignment and the matter proceeded.

{¶4} After plea negotiations, the State moved to dismiss the minor misdemeanor counts for a guilty plea to count one and an agreed sentence of 12 months in prison. Mr. McLaughlin pleaded guilty to count one at a March 5, 2025, change of plea hearing. He signed a written plea of guilty at the change of plea hearing.

{¶5} The trial court asked Mr. McLaughlin if he had any questions before accepting his plea. Mr. McLaughlin asked the court if there "would [] be a chance of getting some type of driving privileges when this is clear?" He was interested in driving privileges because his "fiancée has seizures and stuff real bad, like gran mal seizures," and "when she has seizures, . . . they take her license for six months at a time and she has to be able to keep her job."

{¶6} The trial court informed Mr. McLaughlin before accepting his plea that it "is required to impose a license suspension and that license suspension is for a minimum of three years, up to lifetime[.]" The court stated that it "would have to make a determination based upon the facts of the case, the relevant issues as to whether or not that should be anywhere from between three years to life." The court informed Mr. McLaughlin that it did not know what it was going to impose and that, while it would "consider driving privileges[,]" it was "not making a guarantee on that."

{¶7} The trial court informed Mr. McLaughlin of his Crim.R. 11 rights and accepted his plea. It found him guilty of count one, dismissed the remaining counts, ordered a presentence investigation, and scheduled sentencing.

{¶8} The State maintained at sentencing that Mr. McLaughlin's version of what happened was "contrary to the police report, as well as the dash cam[.]" It argued that Mr. McLaughlin was not taking responsibility and that he was "blaming others in the car, as well as the police for his actions."

**{¶9}** Mr. McLaughlin "apologize[d] for [his] ignorance" at sentencing and asserted that his failure to stop for the police was due to an "anxiety attack[.]" He later acknowledged the statement he had given the police that a passenger, who had a warrant for his arrest, threatened to break his neck if he stopped. Mr. McLaughlin informed the court that he "had the choice to stop and I chose not to." He acknowledged the pursuit lasted for almost forty minutes; involved multiple jurisdictions; reached speeds over 100 miles per hour; that he turned the vehicle's lights on and off in an attempt to black out; that the pursuit ended when he crashed and rolled after driving into a residential yard to avoid spike strips; and, that his conduct was reckless and dangerous. The trial court informed Mr. McLaughlin he was "fortunate" that he had reached an agreed sentence with the State "because had I seen all of this beforehand, I would have said, no[.]"

**{¶10}** The trial court proceeded to address Mr. McLaughlin's prior record at sentencing. The following exchange occurred between the court and Mr. McLaughlin:

> THE COURT: . . . Your prior record also has a prior failure to comply, do you recall that?
>
> MR. MCLAUGHLIN: Your Honor, I honestly don't remember it.
>
> THE COURT: 2003, failure to comply and then I noticed in 2017, you have a resisting arrest.
>
> MR. MCLAUGHLIN: Yes, Your Honor.
>
> THE COURT: And, then in 2018, I see you have an obstructing official business, so, you seem to have a problem with the police. You just don't do what you're supposed to do. When you're faced with having to do something, whether it means being arrested, not interfering in an investigation or their duties or pulling over, you simply don't do so and it doesn't seem like you care too much about anyone else around you at the time.

**{¶11}** The court sentenced Mr. McLaughlin to the agreed 12 months in prison, with credit for time served, ordered restitution, and waived fines and costs. The court again informed Mr. McLaughlin at sentencing that it was "required to impose a mandatory operator's license

suspension" for the offense and gave him an opportunity to say "anything . . . on how long you should lose your license[.]" Mr. McLaughlin stated at sentencing that he should lose his license "for a little while" as "I could have handled my situation a lot better than what I did." The following colloquy then occurred:

> THE COURT: . . . when it comes to license suspension, you clearly, clearly lack the judgment to operate a motor vehicle. Even if I give you the benefit of everything and just assume this was simply an anxiety attack that caused you to run, you are a danger. You are danger to our community, you are a danger to anyone else around you and anyone else in your car. First of all, I don't believe that [the anxiety attack claim], I think it's a lie. Second of all, you lack the judgment to pull over when the police attempt to stop you, okay, that's the bottom line here, so, public safety, what does public safety demand? For somebody who has a history of failure to comply and somebody that engages in this reckless type of conduct, you said for a little while, is that your position on the matter?
>
> MR. MCLAUGHLIN: For quite a while.

{¶12} The court sentenced Mr. McLaughlin to a lifetime operator's suspension. Mr. McLaughlin appeals his lifetime operator's suspension, asserting one assignment of error for this Court's review.

## ASSIGNMENT OF ERROR

**THE [TRIAL] COURT COMMITTED AN ERROR WHEN SENTENCING [MR.] MCLAUGHLIN[.]**

{¶13} Mr. McLaughlin argues in his sole assignment of error that the trial court erred when it imposed a lifetime operator's suspension as part of his sentence. We disagree.

{¶14} The Ohio Supreme Court has held that "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1; R.C. 2953.08(G)(2). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier

of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶15} "Trial courts have full discretion to impose a prison sentence within the statutory range[.]" *State v. Foster*, 2006-Ohio-856, paragraph seven of the syllabus. "Nevertheless, 'the court must carefully consider the statutes that apply to every felony case[,]' including 'R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender.'" *State v. Lucas*, 2019-Ohio-2607, ¶ 13 (9th Dist.), quoting *State v. Mathis*, 2006-Ohio-855, ¶ 38; *State v. Godschild*, 2025-Ohio-5085, ¶ 21 (9th Dist.)

{¶16} Mr. McLaughlin does not dispute that the trial court was required to impose an operator's license suspension as part of his sentence under R.C. 2921.331(B) and (E). He also does not dispute that the lifetime suspension falls within statutory range under R.C. 4510.02(A)(2). Mr. McLaughlin argues on appeal that "[t]he lifetime driver's license suspension was unwarranted." He points out that he had informed the trial court at the change of plea hearing "that he needed limited driving privileges due to his girlfriend suffering grand mal seizures." He suggests the trial court failed to properly consider the felony sentencing factors required by R.C. 2929.11, R.C. 2929.12, and R.C. 2929.13 when it determined his sentence.

{¶17} The State argues that the trial court properly exercised its discretion when it imposed a lifetime operator's license suspension. It maintains that the lifetime suspension was justified considering the failure to comply with an order or signal of a police officer offense and the circumstances surrounding the offense.

{¶18} Mr. McLaughlin pleaded guilty to failure to comply with an order or signal of a police officer in violation of R.C. 2921.3331(B). The offense was a felony of the third degree as

Mr. McLaughlin's "operation of the motor vehicle . . . caused a substantial risk of serious physical harm to persons or property." R.C. 2921.331(C)(5)(a)(ii).

{¶19} R.C. 2921.331(C)(5)(b) states that the court shall consider R.C. 2929.12, R.C. 2929.13, and the following factors when imposing sentence:

(i) The duration of the pursuit;
(ii) The distance of the pursuit;
(iii) The rate of speed at which the offender operated the motor vehicle during the pursuit;
(iv) Whether the offender failed to stop for traffic lights or stop signs during the pursuit;
(v) The number of traffic lights or stop signs for which the offender failed to stop during the pursuit;
(vi) Whether the offender operated the motor vehicle during the pursuit without lighted lights during a time when lighted lights are required;
(vii) Whether the offender committed a moving violation during the pursuit;
(viii) The number of moving violations the offender committed during the pursuit;
(ix) Any other relevant factors indicating that the offender's conduct is more serious than conduct normally constituting the offense.

{¶20} R.C. 2929.13(C) states that "the sentencing court shall comply with the purposes and principles of sentencing under section 2929.11 of the Revised Code and with section 2929.12 of the Revised Code." The purposes and principles of felony sentencing include "protect[ing] the public from future crime by the offender[,]" "punish[ing] the offender," and rehabilitating the offender. R.C. 2929.11(A).

{¶21} The trial court noted at sentencing factors set forth in R.C. 2921.331(C)(5)(b) including the duration of the pursuit, the rate of speed Mr. McLaughlin operated his vehicle during the pursuit, and the fact that Mr. McLaughlin operated his vehicle at times during the pursuit without lighted lights. It also noted "other relevant factors" including the fact that the pursuit came to an end only after Mr. McLaughlin had driven into a residential yard to avoid spike strips. The

trial court further noted Mr. McLaughlin's prior failure to comply, resisting arrest, and obstructing official business convictions, factors relating to R.C. 2929.12(D)(3), and that Mr. McLaughlin "seem[s] to have a problem with the police[,]" and it expressed its concern for "public safety," factors relating to R.C. 2929.11(A).

{¶22} The record supports the conclusion that the court considered the statutory factors when it imposed a lifetime suspension of Mr. McLaughlin's operator's license. We accordingly conclude that Mr. McLaughlin has not established that the record does not support the trial court's findings or that the imposition of is sentence is otherwise contrary to law. *Marcum*, 2016-Ohio-1002, at ¶ 1. Mr. McLaughlin's sole assignment of error is overruled.

III.

{¶23} Mr. McLaughlin's assignment of error is overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

FLAGG LANZINGER, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

ANGELA WYPASEK, Prosecuting Attorney, and JOSEPH F. SALZGEBER, Assistant Prosecuting Attorney, for Appellee.